**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**EASTERN DIVISION**

| | | |
|---|---|---|
| DONALD GEORGE REZENDES, | ) | No. ED CV 14-1441-PLA |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM OPINION AND ORDER** |
| | ) | |
| CAROLYN W. COLVIN, ACTING COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | ) | |
| | ) | |
| Defendant. | ) | |

I.

**PROCEEDINGS**

Plaintiff filed this action on July 14, 2014, seeking review of the Commissioner's denial of his application for Disability Insurance Benefits ("DIB"). The parties filed Consents to proceed before the undersigned Magistrate Judge on August 21, 2014, and February 12, 2015. Pursuant to the Court's Order, the parties filed a Joint Stipulation on March 26, 2015, that addresses their positions concerning the disputed issues in the case. The Court has taken the Joint Stipulation under submission without oral argument.

/

/

## II.

## <u>BACKGROUND</u>

Plaintiff was born on June 10, 1956.  [Administrative Record ("AR") at 25, 136.]  He has past relevant work experience as a carpenter.  [AR at 24, 60.]

On June 21, 2011, plaintiff filed an application for a period of disability and DIB, alleging that he has been unable to work since August 23, 2010.  [AR at 14, 136-37.]  After his application was denied initially and upon reconsideration, plaintiff timely filed a request for a hearing before an Administrative Law Judge ("ALJ").  [AR at 14, 87-88.]  A hearing was held on December 11, 2012, at which time plaintiff appeared represented by an attorney, and testified on his own behalf.  [AR at 31-68.]  A vocational expert ("VE") also testified.  [AR at 59-65.]  On January 7, 2013, the ALJ issued a decision concluding that plaintiff was not under a disability from August 23, 2010, the alleged onset date, through January 7, 2013, the date of the decision.  [AR at 14-26.]  Plaintiff requested review of the ALJ's decision by the Appeals Council.  [AR at 10.]  When the Appeals Council denied plaintiff's request for review on May 22, 2014 [AR at 4-8], the ALJ's decision became the final decision of the Commissioner.  <u>See</u> <u>Sam v. Astrue</u>, 550 F.3d 808, 810 (9th Cir. 2008) (<u>per</u> <u>curiam</u>) (citations omitted). This action followed.

## III.

## <u>STANDARD OF REVIEW</u>

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits.  The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards.  <u>Berry v. Astrue</u>, 622 F.3d 1228, 1231 (9th Cir. 2010) (citation omitted).

"Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Carmickle v. Comm'r, Soc. Sec. Admin.</u>, 533 F.3d 1155, 1159 (9th Cir. 2008) (citation and internal quotation marks omitted); <u>Reddick v. Chater</u>, 157 F.3d 715, 720 (9th Cir. 1998) (same).  When determining whether substantial evidence exists to support the Commissioner's decision, the Court

examines the administrative record as a whole, considering adverse as well as supporting evidence. Mayes v. Massanari, 276 F.3d 453, 459 (9th Cir. 2001) (citation omitted); see Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008) ("[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence.") (citation and internal quotation marks omitted).   "Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." Ryan, 528 F.3d at 1198 (citation and internal quotation marks omitted); see Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006) ("If the evidence can support either affirming or reversing the ALJ's conclusion, [the reviewing court] may not substitute [its] judgment for that of the ALJ.") (citation omitted).


**IV.**

**THE EVALUATION OF DISABILITY**

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months.  42 U.S.C. § 423(d)(1)(A); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).


**A.     THE FIVE-STEP EVALUATION PROCESS**

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled.  20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995), as amended April 9, 1996.  In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied.  Id.  If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting his ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied.  Id.  If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing

of Impairments ("Listing") set forth at 20 C.F.R. part 404, subpart P, appendix 1; if so, disability is conclusively presumed and benefits are awarded.  Id.  If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" to perform his past work; if so, the claimant is not disabled and the claim is denied.  Id.  The claimant has the burden of proving that he is unable to perform past relevant work.  Drouin, 966 F.2d at 1257.  If the claimant meets this burden, a prima facie case of disability is established.  Id.  The Commissioner then bears the burden of establishing that the claimant is not disabled, because he can perform other substantial gainful work available in the national economy.  Id.  The determination of this issue comprises the fifth and final step in the sequential analysis.  20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

## B.    THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS

At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since August 23, 2010, the alleged onset date.[1]  [AR at 16.]  At step two, the ALJ concluded that plaintiff has the severe impairments of left side weakness and imbalance, status post cerebral vascular accident, and short-term memory loss.  [Id.]  The ALJ found that although plaintiff's short-term memory loss is severe, "it is only minimally so."  [Id.]  He also found that plaintiff's conditions of edema, high blood pressure, obesity, and arthritis of the right knee are non-severe "as they have no more than a minimal attempt [sic] on the claimant's ability to engage in work-related activities."  [Id.]  He also noted plaintiff's "remote history of heart surgery in 1963, left Achilles tendon repair, and right carpal tunnel syndrome surgery, all of which are considered non-severe."  [Id.]    Finally, he found plaintiff's "medically determinable impairment of depression," to be non-severe as it "does not cause more than minimal limitation in the claimant's ability to perform basic mental work activities."  [Id.]  At step three, the ALJ determined that plaintiff does not have an impairment or a combination of impairments that meets or

---

[1]    The ALJ concluded that plaintiff meets the insured status requirements of the Social Security Act through December 31, 2016.  [AR at 16.]

1  medically equals any of the impairments in the Listings. [AR at 17.] The ALJ further found that plaintiff

2  retained the residual functional capacity ("RFC")[2] to perform medium work as defined in 20 C.F.R. §

3  404.1567(c),[3] as follows:

4       [He] can lift, carry, push, and pull 50 pounds occasionally and 25 pounds frequently. He
        can push and pull 50 pounds and 25 pounds frequently with the left upper extremity; he
5       has no pushing and pulling limitations with the right upper extremity. He can stand and
        walk for 6 hours out of an 8-hour workday, and he can sit for 6 hours out of an 8-hour
6       workday. He can perform frequent handling with the left upper extremity as well as
        frequent gross manipulation with the left upper extremity. He can frequently climb
7       ramps and stairs, but he cannot climb ladders or scaffolds. He can frequently balance
        and stoop; he can occasionally kneel; he can frequently crouch; and he can
8       occasionally crawl. He cannot work at unprotected heights. He is limited to simple
        tasks.

9

10  [Id.] At step four, based on plaintiff's RFC and the testimony of the VE, the ALJ concluded that plaintiff

11  is unable to perform his past relevant work as a carpenter. [AR at 24, 60-61.] At step five, based on

12  plaintiff's RFC, vocational factors, and the VE's testimony, the ALJ found that there are jobs existing

13  in significant numbers in the national economy that plaintiff can perform, including work as an

14  "industrial cleaner" (Dictionary of Occupational Titles ("DOT") No. 381.687-018), "general laborer"

15  (DOT No. 559.667-014), and "conveyor tender" (DOT No. 921.685-026). [AR at 25, 61-63.]

16  Accordingly, the ALJ determined that plaintiff was not disabled at any time from the alleged onset date

17  of August 23, 2010, through January 7, 2013, the date of the decision. [AR at 26.]

18

19                                             **V.**

20                               **THE ALJ'S DECISION**

21       Plaintiff contends that the ALJ erred when he:  (1) failed to properly evaluate the medical

22  evidence, specifically the opinions of examining physician Divy J. Kikani, M.D.; treating physicians

23

24       [2]   RFC is what a claimant can still do despite existing exertional and nonexertional
        limitations. See Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989). "Between steps
25      three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which
        the ALJ assesses the claimant's residual functional capacity." Massachi v. Astrue, 486 F.3d 1149,
26      1151 n.2 (9th Cir. 2007) (citation omitted).

27       [3]   "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or
        carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that
28      he or she can also do sedentary and light work." 20 C.F.R. § 404.1567(c).

1  Robert Klein, M.D. and Stephen Peterson, M.D.; and reviewing consultant Dr. McKee; (2) erred in his

2  analysis of plaintiff's RFC; and (3) erred in his assessment of plaintiff's subjective symptom testimony

3  and the third-party statement of plaintiff's wife.  [Joint Stipulation ("JS") at 3.]

4       As set forth below, the Court respectfully disagrees with plaintiff and affirms the decision of the

5  ALJ.

6

7  **A.    MEDICAL OPINIONS**

8       **1.    Legal Standard**

9       "There are three types of medical opinions in social security cases:  those from treating

10 physicians, examining physicians, and non-examining physicians."  Valentine v. Comm'r Soc. Sec.

11 Admin., 574 F.3d 685, 692 (9th Cir. 2009); see also 20 C.F.R. §§ 404.1502, 404.1527.  "As a general

12 rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who

13 do not treat the claimant."  Lester, 81 F.3d at 830; Garrison v. Colvin, 759 F.3d 995, 1012 (9th Cir.

14 2014) (citing Ryan, 528 F.3d at 1198); Turner v. Comm'r of Soc. Sec., 613 F.3d 1217, 1222 (9th Cir.

15 2010).  "The opinion of an examining physician is, in turn, entitled to greater weight than the opinion

16 of a nonexamining physician."  Lester, 81 F.3d at 830; Ryan, 528 F.3d at 1198.

17      "[T]he ALJ may only reject a treating or examining physician's uncontradicted medical opinion

18 based on clear and convincing reasons."  Carmickle, 533 F.3d at 1164 (citation and internal quotation

19 marks omitted); Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006).  "Where such an opinion

20 is contradicted, however, it may be rejected for specific and legitimate reasons that are supported by

21 substantial evidence in the record."  Carmickle, 533 F.3d at 1164 (citation and internal quotation marks

22 omitted); Ryan, 528 F.3d at 1198; Ghanim v. Colvin, 763 F.3d 1154, 1160-61 (9th Cir. 2014); Garrison,

23 759 F.3d at 1012.  The ALJ can meet the requisite specific and legitimate standard "by setting out a

24 detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation

25 thereof, and making findings."  Reddick, 157 F.3d at 725.  The ALJ "must set forth his own

26 interpretations and explain why they, rather than the [treating or examining] doctors', are correct."  Id.

27

28

1          **2.      Dr. Peterson and Dr. Klein**

2          On April 14, 2011, at a followup visit after plaintiff's stroke,[4] plaintiff's treating physician, Dr.

3    Peterson, noted that plaintiff's "forgetfulness and short-term memory loss . . . render him unable to

4    work as a carpenter." [AR at 276.] He also noted that plaintiff's left arm weakness also limits plaintiff's

5    ability to work, and plaintiff "cannot work as a carpenter." [Id.] On November 12, 2012, Dr. Peterson

6    also opined that plaintiff "is unable to return to work as a carpenter and with some short-term memory

7    loss and imbalance . . . [plaintiff is not] safe working in any construction effort or job around

8    machinery." [AR at 350.] He noted that plaintiff is not a malingerer, is able to "walk and discuss

9    issues," and stated that he feels that it is plaintiff's left arm weakness and imbalance that prohibits

10   plaintiff from returning to his previous job as a carpenter. [Id.] He also specifically stated that plaintiff

11   "is not depressed nor does he have a personality disorder or any other emotional impairments." [Id.]

12   Dr. Peterson stated that he did not "believe [plaintiff] could hold a job as a laborer or in a less skilled

13   capacity, but . . . will leave this to the Social Security Administration authorities to explore." [Id.]

14         On November 5, 2012, plaintiff's treating neurologist, Dr. Klein, saw plaintiff for a neurological

15   followup visit and assessment of his post-stroke residual symptoms. [AR at 348.] Dr. Klein noted that

16   plaintiff complained of short-term memory problems and was limping after a fall. [Id.] Dr. Klein's

17   examination of plaintiff showed moderate weakness of the left hand, a decreased left hand grip, and

18   slight pronation of the left arm when plaintiff's arms were outstretched. [Id.] Dr. Klein also noted

19   plaintiff has "mild neurologic symptoms" following his stroke, his memory impairment is "relatively

20   stable," his left arm weakness is "persistent," and his gait is abnormal due to problems with the right

21   knee. [AR at 348.] Dr. Klein stated that he believed that plaintiff's left arm weakness prohibits plaintiff

22   "from ever returning to work at his previous job as a carpenter." [AR at 348-49.] Dr. Klein also stated

23   that plaintiff's "[m]ood seems normal, not overly depressed, other than the frustration of being unable

24   to return to work." [AR at 348; see also AR at 282 (March 14, 2011, treatment note reflecting plaintiff's

25   "frustration concerning inability [to] return to his previous work").]

26   /

27

28        [4]    Plaintiff suffered a stroke in August 2010.  [AR at 214-16.]

1  The ALJ gave "some, but not great weight" to the opinions of Dr. Peterson and Dr. Klein[5]:

2  The undersigned does not give great weight because the issue of disability is one for
3  the Commissioner to decide.  However, it is noted both physicians' opinions are
   consistent with the opinion of the vocational expert, and both physicians indicated it was
   the claimant's physical rather than cognitive impairments, which precluded performance
4  of his past relevant work.

5  [AR at 22 (citation omitted).]

6  While the ultimate determination of whether plaintiff is disabled is an issue reserved to the

7  Commissioner, the Social Security "rules provide that [ALJs] must always carefully consider medical

8  source opinions about any issue, including opinions about issues that are reserved to the

9  Commissioner."  Soc. Sec. Ruling ("SSR")[6] 96-5p.  An ALJ must consider a treating physician's

10  opinion on the ultimate issue of disability as he would consider a treating physician's medical opinion,

11  and "if controverted, [it] can be rejected only with specific and legitimate reasons supported by

12  substantial evidence in the record."  Reddick, 157 F.3d at 725; see SSR 96-5p ("[O]pinions from any

13  medical source on issues reserved to the Commissioner must never be ignored.  The adjudicator is

14  required to evaluate all evidence in the case record that may have a bearing on the determination or

15  decision of disability, including opinions from medical sources about issues reserved to the

16  Commissioner.").  Here, although he discounted these doctors' opinions regarding plaintiff's ability to

17  ─────────────

18  [5]  On October 13, 2011, Robin Alleyne, M.D., conducted an internal medicine consultative
    examination of plaintiff.  [AR at 229-33.]  Dr. Alleyne reviewed unspecified medical records from
19  Beaver Medical Group in arriving at his opinion and confirmed that plaintiff's medical records
    showed a history of stroke which caused left arm weakness.  [See AR at 232.]  Plaintiff's left arm
20  weakness was corroborated by Dr. Alleyne's physical examination of plaintiff.  [Id.]  As a result of
    the examination, Dr. Alleyne concluded that plaintiff could perform medium exertion work with
21  frequent pushing and pulling with the left upper extremities; walking and standing no more than
    six hours out of an eight-hour workday; frequent climbing, balancing, kneeling, and crawling;
22  frequent walking on uneven terrain, climbing ladders, and working at heights; and frequent gross
    manipulation on the left side.  [Id. at 232-33.]  The ALJ concurred and adopted Dr. Alleyne's
23  assessment but "included additional limitations in light of the claimant's subjective complaints and
24  left upper extremity impairment."  [AR at 21.]

25  [6]  The Commissioner issues SSRs "to clarify the Act's implementing regulations and the
    agency's policies.  SSRs are binding on all components of the [Social Security Administration].
26  SSRs do not have the force of law.  However, because they represent the Commissioner's
    interpretation of the agency's regulations, we give them some deference.  We will not defer to
27  SSRs if they are inconsistent with the statute or regulations."  Holohan v. Massanari, 246 F.3d
28  1195, 1202 n.1 (9th Cir. 2001) (internal citations omitted).

1  perform his past relevant work as a carpenter, or that he is otherwise unable to work,[7] the ALJ also

2  determined that their opinions regarding plaintiff's inability to perform past work as a carpenter were

3  nevertheless consistent with the VE's identical conclusion, and he adopted that conclusion. [AR at 22

4  (see also AR at 60-61).]  Plaintiff cites to no other opinions of these treating physicians that the ALJ

5  allegedly improperly rejected.

6          Additionally, the ALJ reviewed and considered the treating records from Dr. Peterson and Dr.

7  Klein, as well as plaintiff's other providers at the Beaver Medical Group, and utilized them in arriving

8  at plaintiff's RFC and in determining that it was plaintiff's physical rather than mental impairments that

9  rendered plaintiff unable to perform his past relevant work.[8]  [See, e.g., AR at 19-23 (citing AR exhibits

10  8F, 12F, and 15F), 24.]  Thus, substantial evidence supports this finding and there was no error.

11          Based on the foregoing, the ALJ provided legally sufficient reasons for the weight given to the

12  opinions of Dr. Peterson and Dr. Klein, and there was no error.

13

14          **3.**    **Dr. Kikani**

15          On November 7, 2011, examining psychiatrist Dr. Kikani conducted a psychiatric evaluation of

16  ────────────────────

17      [7]   Dr. Peterson also stated that plaintiff "cannot work in his capacity as a carpenter nor as a

18  laborer," and that "it is the left arm weakness and his imbalance that . . . prohibits [plaintiff] from
    returning to his previous job as a carpenter."  [AR at 350.]  He then made the ambiguous

19  statement that he does "not believe" that "it is reasonable to try to retrain" plaintiff, or that plaintiff
    "could hold a job as a laborer or in a less skilled capacity," but that he "will leave this to the [SSA]

20  authorities to explore." [Id. (emphasis added).]  As conceded by plaintiff, Dr. Peterson's statement
    is little more than an expression of doubt regarding plaintiff's ability to perform work other than as

21  a carpenter or laborer [JS at 4], not a valid medical opinion regarding plaintiff's functional work-
    related limitations.  Accordingly, the ALJ's failure to specifically address this particular statement,

22  which does not reflect Dr. Peterson's medical judgment about the nature and severity of plaintiff's
    impairments, resulting mental or physical restrictions, or what plaintiff could still do despite his

23  impairments, was not error because it was not a valid medical opinion, nor did it even
    unequivocally express an opinion as to the ultimate issue of disability.  See 20 C.F.R. §

24  404.1527(a) (defining medical opinion as statements from physicians that reflect judgments about
    the nature and severity of the claimant's impairment, including symptoms, diagnosis and

25  prognosis, and what the claimant can still do despite the impairment and any physical or mental
    restrictions).

26

27      [8]   Plaintiff does not argue that the ALJ improperly discounted Dr. Peterson's and Dr. Klein's

28  conclusion that plaintiff's physical -- not mental -- impairments precluded plaintiff from performing
    his past work as a carpenter.

plaintiff.  [AR at 234-37.]  Dr. Kikani noted that plaintiff appeared unkempt; his speech was slow; his affect was depressed and anxious; and his thought content reflected "feelings of despair, helplessness, and hopelessness, change in lifestyle due to suffering from stroke, unable to work as carpenter due to clumsy left hand, and also problem with some memory."  [AR at 235.]  Dr. Kikani's mental status examination showed plaintiff's memory to be impaired for recent events [AR at 235], and Dr. Kikani diagnosed plaintiff with "[m]ood disorder, depressed type due to medical condition."  [AR at 236.]  He stated that based on the "current psychiatric evaluation and mental status examination, [plaintiff] does show moderate impairment in his social functioning and mild to moderate impairment in his activities of daily living.  Concentration, persistence, and pace are moderately impaired."  [Id.] He concluded:

> The patient in my opinion will have mild to moderate difficulty remembering, understanding, and carrying out simple instruction, moderate difficulty in remembering, understanding, and carrying out complex instructions, and moderate difficulty in able [sic] to persist at normal work situation under customary work pressure.  The patient does show moderate impairment in his ability to respond appropriately to coworkers, supervisors and public; moderate impairment in his ability to respond appropriately to usual work situations, attendance, and safety; moderate impairment in his ability to cope with change in routine work setting; and moderate episodes of emotional deterioration at normal work situations under customary work pressure.  If awarded, the patient in my opinion needs payee to manage his finances.  From psychiatric standpoint of view, the patient is moderately psychiatrically impaired, needs ongoing psychiatric treatment both with medications and psychotherapy.

[AR at 237.]

The ALJ stated that he "[did] not give great weight" to Dr. Kikani's opinion because Dr. Kikani "placed entirely too much emphasis on the claimant's subjective complaints in assessing plaintiff's limitations."  [AR at 21.]  In his assessment, Dr. Kikani noted that plaintiff "subjectively reports" a problem with short-term memory, that his "left hand is clumsy," he has a problem "maintaining sustained focus," he has feelings of despair, helplessness, and hopelessness, and he feels guilty "because he is not an effective provider" and "is unable to work productively."  [AR at 234-35, 236.] In addition to these subjective complaints, plaintiff also reported no suicidal thoughts, and no problem taking care of his personal needs or doing household chores, and stated that he "feels he can handle his own finances."  [AR at 234-35.]  Although Dr. Kikani conducted a mental status examination, the only subjective complaints raised by plaintiff that appear to have been corroborated by Dr. Kikani's

1  independent clinical testing are plaintiff's short-term memory problems [see, e.g., AR at 235 (finding
2  plaintiff's "memory span is impaired for recent events," where testing showed plaintiff could recall one
3  out of three words after five minutes, and has "some problem" with serial 7s)], and plaintiff's expressed
4  feelings of despair and helplessness based on Dr. Kikani's observation that plaintiff "does react with
5  anger, frustration, etc. justifying the differential diagnosis of mood disorder due to medical condition."
6  [AR at 236.]

7       Where a provider's opinions are based "to a large extent" on self-reports and not on clinical
8  evidence, and the ALJ, as here, properly finds the claimant not credible,[9] the ALJ may properly
9  discount the provider's opinion. Ghanim, 763 F.3d at 1162.

10      Even if the ALJ erred in finding that Dr. Kikani's opinion was based to a large extent on
11  plaintiff's self-reports and not on Dr. Kikani's clinical findings, the error was harmless. See Curry v.
12  Sullivan, 925 F.2d 1127, 1131 (9th Cir. 1991) (harmless error rule applies to review of administrative
13  decisions regarding disability).  That is because the ALJ also found that plaintiff's alleged mental
14  impairment was not severe based on the fact that "the totality of the evidence as well as the
15  examinations and assessments by the claimant's treating physicians do not reveal that the claimant
16  is as impaired" mentally as suggested by Dr. Kikani. [AR at 21.] As discussed above, the ALJ properly
17  gave some, but not great weight to the opinions of plaintiff's treating physicians and substantial
18  evidence supports this finding.  For instance, Dr. Peterson specifically stated that plaintiff was not
19  depressed and had no emotional factors relating to his disability.  [AR at 350.]  Dr. Klein stated that
20  plaintiff's "[m]ood seems normal, not overly depressed, other than the frustration of being unable to
21  return to work."  [AR at 348; see also AR at 282 (March 14, 2011, note also reflecting plaintiff's
22  "frustration concerning inability [to] return to his previous work").]  Plaintiff also declined Dr. Klein's
23  suggestion of referral to a counselor or antidepressants in response to plaintiff's complaints of feeling
24  "a little depressed."  [AR at 282.]

25      Based on the foregoing, the ALJ provided specific and legitimate reasons for giving plaintiff's
26  treating physicians' opinions regarding plaintiff's mental impairments more weight than he gave to the

27  _____

28      [9]   The ALJ's credibility determination is discussed infra Part V.C.

1    opinion of examining physician Dr. Kikani, and there was no error.  Lester, 81 F.3d at 830

2

3         **4.    Dr. McKee**

4         On December 6, 2011, Dr. McKee, a non-examining clinical psychologist, reviewed plaintiff's

5    medical records and completed a Psychiatric Review Technique ("PRT") and Mental Residual

6    Functional Capacity Assessment ("MRFCA").  [AR at 238-40, 242-55.]  In the MRFCA, Dr. McKee

7    found plaintiff markedly limited in his ability to understand, remember, and carry out detailed

8    instructions, and in his ability to interact with the general public.  [AR at 238, 239.]  In all other work-

9    related mental activities, Dr. McKee found plaintiff "not significantly limited."  [AR at 238-40.]  After

10   reviewing the medical evidence, Dr. McKee opined that the record supports that plaintiff has a "mild

11   memory impairment and affective mental impairment."  [AR at 254.]  He found that plaintiff's memory

12   impairment was stable, and the mental impairments "appear to impose mild limitations in [the] area of

13   daily activities and moderate functional limitations in the areas of social interactions & concentration,

14   persistence, & pace."  [Id.]

15        The ALJ stated that "based on the assessment by Dr. Robert Klein and by the statements of

16   Dr. Peterson regarding a mild cognitive impairment, the claimant's treating physician[s], the

17   undersigned does not find that the claimant has a severe mental impairment . . .[and] the functional

18   capacity adopted herein takes full account of the mild objective findings, incorporates the restrictions

19   supported by objective evidence, and accords the claimant every reasonable benefit of the doubt."

20   [AR at 24.]

21        For the same reasons discussed above regarding the ALJ's discounting of the opinion of Dr.

22   Kikani, the ALJ provided specific and legitimate reasons to discount Dr. McKee's opinions regarding

23   plaintiff's mental impairments and there was no error.

24

25   **B.    THE ALJ'S RFC DETERMINATION**

26        Plaintiff contends that the ALJ "did not account for all pertinent medical records or severe

27   impairments, specifically pertaining to [plaintiff's] diagnoses of edema, arthritis of the right knee,

28   obesity, left Achilles tendon repair, and carpal tunnel syndrome" [JS at 15], as well as plaintiff's

1    additional mental limitations "as highlighted in Issue No. 1." [JS at 16.]  Plaintiff also argues that the

2    ALJ "failed to use the correct legal standard in discussing these impairments at Steps 2 and 5 of the

3    Sequential Evaluation." [JS at 15.]  Finally, he argues that the RFC limitation precluding him from

4    climbing ladders or scaffolds would prevent him from performing the job of industrial cleaner, which

5    requires "occasional climbing" generally, and includes a task description relating to the cleaning of

6    overhead pipes -- a task which he alleges could not be accomplished without climbing a ladder or

7    scaffold.  [JS at 16 (citing DOT No. 381.687-018).]  He notes that occasional climbing is also required

8    for the positions of laborer and industrial cleaner.  [Id. (citing DOT Nos. 559.667-014, 921.685-026).]

9          First, as previously discussed in relation to plaintiff's first issue, the ALJ properly considered and

10   evaluated the medical opinions of record in considering not only plaintiff's left side weakness,

11   imbalance, cerebral vascular accident, and short-term memory loss, but also whether plaintiff's mental

12   health impairments, edema, high blood pressure, obesity, arthritis of the right knee, left Achilles tendon

13   repair, and right carpal tunnel syndrome surgery were considered severe.  [See AR at 16, 23.]  Here,

14   plaintiff generally points to some treating records as evidence that plaintiff's knee injury was severe.[10]

15   [See, e.g., JS at 15 (citing "records of Beaver Medical Clinic" dated May 25, 2012, August 27, 2012,

16   and November 5, 2012).]  However, the ALJ considered these same records as well as additional

17   evidence, noting that on May 25, 2012, plaintiff's knee showed mild swelling and tenderness with a

18   reduce range of motion, but was not warm to the touch; May 25, 2012, x-rays showed small to

19   moderate knee joint effusion, mild to moderate osteoarthritic changes involving the medial knee

20   compartment and patellofemoral joints, and loose bodies posteriorly; and physical examination on July

21   3, 2012, revealed mild effusion and medial joint line tenderness but was "otherwise normal."  [AR at

22   23 (citing AR at 312, 323, 343).]  The ALJ concluded that plaintiff's right knee impairment was non-

23   severe "at this time," because the evidence did not support a finding that the impairment will last for

24   twelve months and plaintiff had received only conservative treatment.  [Id.]  He also found that this and

25   plaintiff's other non-severe impairments did not have more than a minimal effect on plaintiff's ability to

26

27   _____

28       [10]   Plaintiff testified that he fell getting out of the shower and injured his knee.  [AR at 40;
         see also AR at 312, 316, 323.]

13

1    engage in work-related activities. [AR at 16.] Nevertheless, taking into account at least some of these

2    non-severe impairments, the RFC included limitations to frequent climbing of ramps and stairs, but

3    precluding climbing ladders or scaffolds; frequent balancing and stooping; occasional kneeling;

4    frequent crouching; occasional crawling; no working at unprotected heights; and simple tasks. [AR at

5    17.] Plaintiff points to no evidence contradicting the ALJ's findings regarding his non-severe

6    impairments, or that would support any greater functional limitations.

7         Plaintiff also argues that his RFC limitation precluding him from climbing ladders or scaffolds

8    would restrict him from performing the jobs of industrial cleaner, laborer, or conveyor tender. [JS at

9    16.] He also complains that the "questioning at the time of the hearing was . . . unpersuasive to

10    resolve any conflict." [Id.] However, at the hearing the ALJ asked the VE whether his testimony

11    concerning alternative occupations was consistent with the DOT. [AR at 62.] The VE explained that

12    the "only exception would be [that] the [DOT] does not specif[y] climbing on ladders, ropes, and

13    scaffolds. They would just indicate climbing [INAUDIBLE] include stairs or ramps." [AR at 62-63.] The

14    VE explained that his response to the ALJ's hypothetical, which included all of plaintiff's RFC

15    limitations, was based on the DOT but also based on his experience and knowledge of the jobs cited.[11]

16    [AR at 63.] Plaintiff points to no evidence that would contradict the VE's statement. A VE's recognized

17    expertise provides the necessary foundation for his testimony, and no additional foundation is required.

18    Bayliss v. Barnhart, 427 F.3d 1211, 1217-18 (9th Cir. 2005).[12]

19         There was no error in the ALJ's RFC determination.

20

21

22     [11] When the ALJ added the limitation of "[n]o gross manipulation or fine manipulation with the

23    upper left extremity," to his hypothetical to the VE, the VE testified that, consistent "[m]ore with [his] experience" than with the DOT, such an individual would not be able to perform any work. [AR at 63.]

24

25     [12] Plaintiff states in passing that the job of industrial cleaner "is the only job identified that arguably exists in significant enough numbers." [JS at 16.] Because plaintiff concedes the

26    position of industrial cleaner exists in significant numbers in the regional or national economy, and the Court determines that the VE's testimony provides an adequate foundation for the ALJ's

27    finding that plaintiff could perform that occupation, there is no need to consider whether there are significant numbers of positions available in the regional or national economy for the occupations

28    of laborer or conveyor tender.

1   **C.      PLAINTIFF'S CREDIBILITY AND THE LAY WITNESS TESTIMONY**

2           Plaintiff contends that his post-stroke limitations are "largely mirrored" by his treating providers,

3   an examining physician and two non-examining reviewing consultants.  [AR at 21.]  He testified that

4   he can drive a car as he steers with his right hand and does not have to clutch, and does not shift or

5   hang onto the wheel with his left hand; he could not perform his work as a carpenter when he tried to

6   go back to work; he has weakness in his left arm and no grip in his left hand; he is unable to lift a

7   gallon of milk; he has balance issues; he fell and injured his knee as he was getting out of the shower;

8   and he has short-term memory issues.  [JS at 21 (citing AR at 37-40, 44).]  He argues that the ALJ's

9   finding of only "mild residual symptoms," and "limitation to 'simple tasks'," fails to take into account the

10  examining psychiatrist's finding "that plaintiff's insight into his psychiatric condition was impaired," and

11  that the examining psychiatrist suggested plaintiff should have a representative payee to manage

12  plaintiff's finances.  [JS at 22 (citing AR at 23, 236-37).]  He also complains that the ALJ failed to

13  properly discount the third-party report of plaintiff's wife by stating only that "it is unsupported by

14  objective findings."  [Id. (citing AR at 24; see also AR at 179-84).]

15

16          **1.      Plaintiff's Credibility**

17          "To determine whether a claimant's testimony regarding subjective pain or symptoms is

18  credible, an ALJ must engage in a two-step analysis."  Lingenfelter v. Astrue, 504 F.3d 1028, 1035-36

19  (9th Cir. 2007).  "First, the ALJ must determine whether the claimant has presented objective medical

20  evidence of an underlying impairment 'which could reasonably be expected to produce the pain or

21  other symptoms alleged.'"  Id. at 1036 (quoting Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir. 1991)

22  (en banc)).  Second, if the claimant meets the first test, the ALJ may reject the claimant's testimony

23  about the severity of his symptoms "only upon (1) finding evidence of malingering, or (2) expressing

24  clear and convincing reasons for doing so."  Benton v. Barnhart, 331 F.3d 1030, 1040 (9th Cir. 2003).

25  Factors to be considered in weighing a claimant's credibility include:  (1) the claimant's reputation for

26  truthfulness; (2) inconsistencies either in the claimant's testimony or between the claimant's testimony

27  and his conduct; (3) the claimant's daily activities; (4) the claimant's work record; and (5) testimony

28  from physicians and third parties concerning the nature, severity, and effect of the symptoms of which

1    the claimant complains.  See Thomas, 278 F.3d at 958-59; see also Ghanim, 763 F.3d at 1163; 20

2    C.F.R. §§ 404.1529(c), 416.929(c).

3          Where, as here, plaintiff has presented evidence of an underlying impairment, and the ALJ did

4    not find "affirmative evidence" of malingering [see generally AR at 17-24], the ALJ's reasons for

5    rejecting a claimant's credibility must be specific, clear and convincing.  Burrell v. Colvin, 725 F.3d

6    1133, 1136 (9th Cir. 2014) (citing Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012)).  "General

7    findings [regarding a claimant's credibility] are insufficient; rather, the ALJ must identify what testimony

8    is not credible and what evidence undermines the claimant's complaints."  Id. at 1138 (quoting Lester,

9    81 F.3d at 834) (internal quotation marks omitted).  The ALJ's findings "must be sufficiently specific to

10   allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible

11   grounds and did not arbitrarily discredit a claimant's testimony regarding pain."  Bunnell, 947 F.2d at

12   345-46 (citation and internal quotation marks omitted).  A "reviewing court should not be forced to

13   speculate as to the grounds for an adjudicator's rejection of a claimant's allegations of disabling pain."

14   Id. at 346.  As such, an "implicit" finding that a plaintiff's testimony is not credible is insufficient.  Albalos

15   v. Sullivan, 907 F.2d 871, 874 (9th Cir. 1990) (per curiam).

16         Here, the ALJ found plaintiff's testimony was "not entirely credible" [AR at 18] for the following

17   reasons:

18          The claimant has had a stroke, but he has mild residual symptoms.  He is taking only
            Aspirin and an anti-hypertensive medication.   The claima[n]t has complained of
19          depression over not being able to perform his past work, but he has refused anti-
            depressant medication, and his depression seems more similar to frustration. While the
20          claimant has complained of cognitive dysfunction, the record shows only slight
            impairments.  Nonetheless the undersigned has considered the claimant's subjective
21          complaints and limited him to simple tasks. The claimant lives in a house with his wife
            and daughter.  He has no difficulty with his personal care, and he drives.  He is able to
22          independently eat, dress, take a bath, and attend to toiletry needs.  He also does
            household chores including cooking and cleaning, and he believes he can take care of
23          his own finances.  The claimant testified that he spends his days showering, eating
            cereal, taking his daughter to school, picking up toys for his grandchildren, making
24          dinner, and waiting for his spouse to come home. He reads books on fishing, guns, and
            building projects, which indicates he is capable of concentrating.   All of the
25          aforementioned factors are inconsistent with the presence of an incapacitating or
            debilitating medical condition.

26

27   [AR at 23 (citation omitted).]

28

                                                    16

**a.    Objective Medical Evidence**

The ALJ noted that although plaintiff had a stroke, the record reflected only "mild residual symptoms." [AR at 23.]

While a lack of objective medical evidence supporting a plaintiff's subjective complaints is one factor that an ALJ can consider in evaluating symptom testimony, it cannot provide the <u>only</u> basis to reject a claimant's credibility. <u>See Light v. Soc. Sec. Admin.</u>, 119 F.3d 789, 792 (9th Cir. 1997); <u>Burch v. Barnhart</u>, 400 F.3d 676, 681 (9th Cir. 2005) ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis."); <u>accord</u> <u>Rollins v. Massanari</u>, 261 F.3d 853, 857 (9th Cir. 2001).

Here, the ALJ conducted a thorough review of the medical records, and noted the following: a brain MRI revealed no acute findings, and a CT study of plaintiff's head was normal; a carotid ultrasound showed mild thickening with the distal right common carotid, but was otherwise unremarkable; plaintiff had slight weakness in his left upper extremity; an MRI study showed a "small focus of T2 prolongation at the great white matter junction of the left parietal lobe, and [was] determined to be of doubtful significance"; neurological examination showed no facial weakness, intact sensation, normal motor strength in all extremities and without pronator drift, symmetric reflexes in the upper and lower extremities, and normal gait (prior to plaintiff's fall); monthly examinations by Dr. Peterson revealed no significant abnormalities although plaintiff complained of occasional exertional fatigue with no chest pain, and slight shortness of breath; plaintiff complained of mild imbalance and poor short term memory although he scored 20 out of 20 on a mini-mental status examination; plaintiff complained of only slight depression and declined anti-depressant medication and counseling; there was slight pronation of the left arm with mild weakness on motor testing; plaintiff complained of swelling in his lower extremities and water pills were recommended; motor testing revealed grade four motor strength in the left upper extremity; examination showed full range of motion in both the upper and lower extremities, normal sensation, hand coordination, and reflexes; plaintiff reported mild dyspnea with walking; plaintiff walked with a normal gait and evidenced no edema between December 2011 and March 2012 and at other times; plaintiff obtained a score of 20 out of 21 on a mini-mental status examination in November 2012; there was evidence of moderate weakness and decreased grip

strength in the left hand; plaintiff had a history of heart surgery but no residual symptoms; plaintiff exhibited right knee pain and swelling as a result of a fall, and mild to moderate osteoarthritic changes; and plaintiff rarely took medication for his knee pain. [AR at 18-23 (citations omitted).]  Additionally, as previously discussed, although plaintiff complains of depression, both of his treating physicians noted that plaintiff's work-related impairments involve his physical, and not his mental limitations. [See AR at 282, 348, 350.]

Based on the foregoing, substantial evidence supports the ALJ's finding that plaintiff's subjective symptom statements were not supported by the objective medical evidence.  However, because this reason by itself cannot be the sole legally sufficient reason for discounting plaintiff's credibility, the ALJ's credibility determination rises or falls with the other grounds for discrediting plaintiff offered by the ALJ.

### b.   Conservative Treatment

The ALJ found that plaintiff had received only conservative treatment and was treated primarily with aspirin and an anti-hypertensive medication. [AR at 23.]  Although plaintiff had been prescribed Vicodin, he had only taken about twenty of them between June and December 2012 when his knee was "excruciatingly" painful. [AR at 41.]  He also stated that he does not "like taking that kind of stuff very often," and it makes him want to go to sleep. [Id.]  Plaintiff also declined to take anti-depressant medication or see a counselor. [AR at 23, 276.]  The treatment a claimant uses to alleviate pain is a relevant factor in evaluating the intensity and persistence of symptoms. 20 C.F.R. § 404.1529(c)(3). Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for social security benefits. See Warre v. Comm'r of Soc. Sec. Admin., 493 F.3d 1001, 1006 (9th Cir. 2006).  Thus, the ALJ properly found that plaintiff's testimony of debilitating impairments is inconsistent with the limited treatment he has received.

An ALJ may properly rely on the fact that only routine and conservative treatment has been prescribed. Johnson v. Shalala, 60 F.3d 1428, 1432 (9th Cir. 1995). "Conservative treatment" has been characterized by the Ninth Circuit as, for example, "treat[ment] with an *over-the-counter pain medication*" (see, e.g., Parra v. Astrue, 481 F.3d 742, 751 (9th Cir. 2007) (emphasis added);

18

1    Tommasetti v. Astrue, 533 F.3d 1035, 1040 (9th Cir. 2008) (holding that the ALJ properly considered

2    the plaintiff's use of "conservative treatment including physical therapy and the use of anti-inflammatory

3    medication, a transcutaneous electrical nerve stimulation unit, and a lumbosacral corset")), or a

4    physician's failure "to prescribe . . . any serious medical treatment for [a claimant's] supposedly

5    excruciating pain." Meanel v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999).

6         Based on the foregoing, substantial evidence supports the ALJ's finding that plaintiff's

7    conservative treatment contradicts his complaints of disabling impairments and this was a clear and

8    convincing reason for discounting plaintiff's credibility.

9

10                          c.     Activities of Daily Living

11        The ALJ also relied on plaintiff's activities of daily living to support his credibility determination.

12        An ALJ may rely on a claimant's daily activities to support an adverse credibility determination

13   when those activities:  (1) "contradict [claimant's] other testimony"; or (2) "meet the threshold for

14   transferable work skills." Orn v. Astrue, 495 F.3d 625, 639 (9th Cir. 2007).  As a result, a plaintiff's

15   credibility may be discounted if he "is able to spend a substantial part of [his] day performing

16   household chores or other activities that are transferable to a work setting." Smolen v. Chater, 80 F.3d

17   1273, 1284 n.7 (9th Cir. 1996) (citation omitted).   A claimant, however, need not be "utterly

18   incapacitated to be eligible for benefits . . . and many home activities are not easily transferable to what

19   may be the more grueling environment of the workplace, where it might be impossible to periodically

20   rest or take medication." Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989) (citations omitted); Gallant

21   v. Heckler, 753 F.2d 1450, 1453 (9th Cir. 1984) (an ability to engage in some physical activities is not

22   necessarily inconsistent with a finding of disability).   "Even where those activities suggest some

23   difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that

24   they contradict claims of a totally debilitating impairment." Molina, 674 F.3d at 1112 (citing Turner, 613

25   F.3d at 1225; Valentine, 574 F.3d at 693).

26        An ALJ must identify "*which* daily activities conflicted with *which* part of [c]laimant's testimony,"

27   pointing to *specific facts* in the record to support an adverse credibility finding.  Burrell, 775 F.3d at

28   1138.  Here, the ALJ noted that plaintiff reads books on fishing, guns, and building projects, indicating

he is capable of concentrating.  [AR at 23.]  He also noted that plaintiff believes that he can do his own finances, has no difficulty with personal care, and performs a wide range of household chores, including making dinner and cleaning, and driving his daughter to school.  [Id.]  Plaintiff's wide-ranging daily activities are corroborated by the third-party statement completed by his wife [AR at 180-82] and support the ALJ's finding that plaintiff's daily activities are inconsistent with the presence of an incapacitating or debilitating medical condition.  [AR at 23.]  Additionally, based on plaintiff's subjective complaints, in determining plaintiff's RFC the ALJ gave plaintiff "every reasonable benefit of the doubt" and included additional left upper extremity pushing, pulling, and handling limitations, postural limitations, an environmental limitation precluding work at unprotected heights, and a limitation to simple tasks.  [AR at 17, 23, 24.]

Based on the foregoing, substantial evidence supports the ALJ's finding that plaintiff's daily activities contradict his complaints of disabling impairments and this was a clear and convincing reason for discounting plaintiff's credibility.

### d.   Conclusion

The ALJ's reasons for discounting plaintiff's subjective symptom complaints were "sufficiently specific" to allow this Court to conclude that the ALJ discounted plaintiff's testimony on permissible grounds and did not arbitrarily discredit plaintiff's testimony regarding pain.

### 2.   Lay Witness Statement

Plaintiff's wife stated in her third-party function report that plaintiff's imbalance causes him to fall from ladders at home; he cannot remember measurements or calculations; he gives wrong directions; he stumbles and cannot hold or turn items in his left hand due to his weakness; he is depressed and rarely socializes; and he falls easily.  [AR at 179-86.]  Plaintiff's wife's report also corroborated plaintiff's daily activities.  [Id.]  In fact, her third-party function report almost completely mirrors plaintiff's own adult function report.  [Compare AR at 179-86 with AR at 187-91.]  The ALJ considered plaintiff's wife's report and found that "her opinion is not entitled to great weight as it is unsupported by objective findings."  [AR at 24.]  As examples, the ALJ stated that although he believes

plaintiff has "some imbalance," objective medical evidence showed that he had a "normal walk and could tandem walk without difficulty before his knee injury," plaintiff injured his knee by twisting it, not by falling,[13] and there was no evidence to suggest that plaintiff's knee impairment "will last for six months." [Id. (citations omitted).]

An ALJ may consider lay witness testimony to determine the severity of a claimant's impairments and how the impairments affect his ability to work. Stout v. Comm'r of Social Sec. Admin., 454 F.3d 1050, 1053 (9th Cir. 2006); 20 C.F.R. §§ 404.1513(d)(4), (e), 416.913(d)(4), (e). Lay witnesses include spouses, parents and other care givers, siblings, other relatives, friends, neighbors, and clergy. 20 C.F.R. § 404.1513(d)(4). Thus, lay witness testimony by friends and family members who have the opportunity to observe a claimant on a daily basis "constitutes qualified evidence" that the ALJ must consider. See Sprague v. Bowen, 812 F.2d 1226, 1231-32 (9th Cir. 1987); Smolen, 80 F.3d at 1289 (testimony from lay witnesses, who see the plaintiff on a daily basis and are often family members, is of particular value). The ALJ may discount the testimony of lay witnesses only for "reasons that are germane to each witness." Dodrill, 12 F.3d at 919; Regennitter v. Comm'r of Soc. Sec. Admin., 166 F.3d 1294, 1298 (9th Cir. 1999).

Here, even if the ALJ's reason for rejecting plaintiff's wife's testimony was not legally sufficient, any error was harmless because her testimony mirrored plaintiff's own allegations regarding his limitations. Since, as discussed above, the ALJ provided clear and convincing reasons for rejecting plaintiff's own subjective complaints, it follows that the ALJ had germane reasons to reject plaintiff's wife's identical statements. See Valentine, 574 F.3d at 693-94 (9th Cir. 2009) ("In light of our conclusion that the ALJ provided clear and convincing reasons for rejecting Valentine's own subjective complaints, and because Ms. Valentine's testimony was similar to such complaints, it follows that the ALJ gave germane reasons for rejecting her testimony"); Molina, 674 F.3d at 1121-22 ("[A]n ALJ's failure to comment upon lay witness testimony is harmless where 'the same evidence that the ALJ

_____

[13]   The objective evidence does not support this reason for discounting plaintiff's wife's report. In the evidence cited to by the ALJ, plaintiff's physician merely stated that plaintiff had "sustained a twisting-type injury to his right knee" [AR at 323], which is not inconsistent with plaintiff's testimony that he lost his balance and fell getting out of the shower.  [AR at 57-58.]

1  referred to in discrediting [the claimant's] claims also discredits [the lay witness's] claims.'") (citation

2  omitted).

3

4  **VI.**

5  **CONCLUSION**

6      **IT IS HEREBY ORDERED** that: (1) plaintiff's request for reversal, or in the alternative, remand,

7  is **denied**; and (2) the decision of the Commissioner is **affirmed**.

8      **IT IS FURTHER ORDERED** that the Clerk of the Court serve copies of this Order and the

9  Judgment herein on all parties or their counsel.

10      **This Memorandum Opinion and Order is not intended for publication, nor is it intended**

11  **to be included in or submitted to any online service such as Westlaw or Lexis.**

12

13  DATED:  May 26, 2015

14                                    PAUL L. ABRAMS
                       UNITED STATES MAGISTRATE JUDGE